ANTON L. TRUNK AND CLARA P. TRUNK, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 63380. Filed August 26, 1959.

*Jerome Kamerman, Esq.*, for the petitioners.
*Colin C. Macdonald, Jr., Esq.*, for the respondent.

1128

OPINION.

Kern, *Judge:* Petitioner Clara P. Trunk, who was owner and lessor of the real estate described in our findings, received $80,000 from her lessee simultaneously with her assignment to the lessee of whatever right she might have to a condemnation award and the execution of a modified lease which permitted the lessee to proceed at its option with the construction of a new building of lawful dimensions and which set forth the rental upon renewal in terms of a sum certain. The primary question presented by the facts here present is whether petitioners realized ordinary taxable income upon receipt of the $80,000 or realized proceeds from a capital transaction in the nature of a sale, conversion, or recovery of damages.

In substance petitioners' argument is as follows: The right to a condemnation award, even though not vested in a determined amount, is a capital asset. Petitioner Clara sold such a right to Kresge for $80,000 and this sum is taxable to her as a capital gain to the extent that it exceeds the basis to her of such right. In the alternative, the $80,000 received from Kresge represents compensation for damages to a capital asset and is taxable as a capital gain only to the extent that this amount exceeds the basis to Clara of the asset damaged. In the instant case it is impossible or impractical to find the basis of the separate property sold or damaged and therefore the $80,000 should go to reduce Clara's cost of the entire property before any part can represent taxable income.

In substance the respondent argues as follows: The conditional "right" of Clara to compensation if and when a part of her property

should be taken by condemnation proceedings was not "property" nor was there any "sale or exchange" thereof in 1950 within the meaning of any provision of the Internal Revenue Code so as to qualify the transaction here in question for capital gains treatment. To the contrary, the substance of the transaction as distinguished from its form was the modification of the terms of the lease in return for $80,000, and therefore this sum represented ordinary income.

In our opinion the right of an owner of property to compensation in the form of a condemnation award upon the taking by the sovereign of such property or a part thereof, even though conditional, is a property right incident to ownership. Respondent recognizes on brief that the assignment of such a right "is recognized as creating an equity in the assignee enforceable against the subject matter of the assignment when, and if, it comes into existence," i.e., when as a result of condemnation proceedings the sovereign has taken title to the property condemned. That such a right did in substance exist and that an effective sale thereof was made are indicated by the fact that Kresge collected $25,000 from the city for the sole reason that it had purchased this right from Clara.

Respondent's argument to the effect that the substance of the transaction between Clara and Kresge was the modification of the lease in return for $80,000, and consequently that that sum constituted ordinary income requires an analysis and interpretation of the facts.

The principal and motivating concern of Clara in her transactions with Kresge subsequent to April 4, 1946, and March 13, 1947, was to realize as much money as possible from the threatened condemnation of a part of her property. It was apparent to her (or to her advisers) that if the condemnation occurred while the building still stood upon her property and covered the entire area the condemnation award would amount to a handsome figure, but, conversely, if the building was wrecked by Kresge before the award was granted (pursuant to Kresge's design to erect another building on her premises), the amount of the award would be much less. The prospects of receiving a large condemnation award from the City of New York in compensation for damages to a building which was shortly to be wrecked anyway would be fascinating to most property owners whose civic virtue was not equal to that of Cato the Censor. Kresge, however, was anxious to proceed with the wrecking of the old building and the erection of the new building adapted to its use of the leased premises without regard to the effect of its proposed actions on the amount of the condemnation award which Clara might receive from the city. Under these circumstances and for the purpose of delaying [2]

---

[2] That a considerable delay on Kresge's part was necessary if Clara was to collect the full amount possible from the city is indicated by the fact that while the taking of the 9-foot strip of petitioner's property was proposed in 1946, the city did not acquire title to it until 1955.

Kresge in its proposed wrecking of the building which had suddenly become valuable to her as a potential subject of damage, Clara advanced the somewhat technical argument that since Kresge after March 13, 1947, could not erect on the premises a building with the dimensions originally agreed upon, it could not erect any building, and obtained a temporary restraining order enjoining Kresge from demolishing the old building. Thus Kresge could not proceed with its plans to erect a new building until after protracted litigation, unless it provided some satisfactory compensation to Clara for her inability to collect the full amount of the potential award which she hoped to receive upon the condemnation of the 9-foot strip of this property while it was covered by the old building. Therefore and after bargaining and negotiations, an agreement was worked out whereby Kresge paid Clara $80,000 for "all her right, title and interest in and to any and all condemnation awards for the land and building" here in question. Clara, being satisfied that she had thereby realized all that was then possible from her conditional right to a condemnation award, immediately consented to a modification of the lease which, *inter alia*, permitted Kresge to proceed with its plan to wreck the old building and construct a new one of smaller dimensions, and also provided for slightly higher rentals to Clara.

As we interpret the transaction, what Kresge bought and paid for was Clara's conditional right to a condemnation award. The reason it paid the price it did may have been to induce Clara to accept a modification of the lease which would permit Kresge to proceed with its building plans without waiting for the end of protracted litigation. What Clara sold and received payment for was her conditional right to a condemnation award. She sold this right for the price paid because she thereby avoided the risk of an unfavorable result in the litigation, because the price paid represented a reasonably discounted equivalent of all she could hope for from the condemnation award, even on the assumption that the city would proceed with its taking of the property and that Kresge could be prevented from wrecking the building pending such taking, and because this solution gave her the reasonable equivalent of an award against the city for damages to the old building and at the same time provided for the erection of a new building on her property at the expense of Kresge. The reason she was able to get the price she did from Kresge without waiting for the institution and termination of condemnation proceedings was that she had Kresge "over a barrel" because of clause 6 of the lease and the temporary restraining order. Regardless of their reasons, what the parties to the transaction did was to buy and sell a conditional right to a condemnation award for $80,000.

No element in the transaction related to matters customarily connected with income. No part of the payment could be considered as

representing anticipated income or as in lieu of income. No modification of the lease occurred which affected income items adversely to the interests of petitioner so as to warrant a conclusion that any part of the $80,000 paid to Clara related to such items.

We conclude that this sum constituted payment for the effective transfer to Kresge of a property right of Clara. Respondent has argued that this right was not property and there was no sale or exchange thereof. He has made no alternative contention that even though the right was property and was sold by Clara it was not a capital asset within the meaning of the Internal Revenue Code. We see no reason why it is not a capital asset.

Since we hold that the $80,000 was received by Clara from Kresge as payment for the transfer of a capital asset, it constitutes a capital gain to the extent that it exceeds Clara's basis with regard to the property sold. However, it is impossible or impractical to ascertain the cost basis to Clara of this property right sold which was derived from her right of ownership to the entire property.[3] Her cost basis to the entire property was in excess of $80,000. We conclude that this latter sum was a return of capital and should be applied in reduction of Clara's cost basis to the entire property. See *Inaja Land Co., Ltd.*, 9 T.C. 727.

*Decision will be entered under Rule 50.*

---

[3] In his reply brief respondent argues that the right transferred to Kresge could only be the right to a condemnation award for the taking of the front 9 feet of the land and since the cost basis of the land was treated by petitioners as $65,000, the cost basis of the right transferred was the part of that sum representing the ratio of the part of the land taken to the total area of land. As we interpret the facts, the right transferred was the right to condemnation awards covering damages direct and indirect to the entire property including damages to the building located on the front 9 feet and consequential damages to the remainder. We have found it impractical to make an allocation of Clara's cost basis to the entire property in such a way as to even approximate her cost basis to the right transferred.